UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK FOR ONLINE PUBLICATION ONLY
------------------------------------------------------------- X
AMIN BOOKER,                                :
                                            :
                           Petitioner,      :
                                            :          MEMORANDUM
            - against -                     :          AND ORDER
                                            :
THOMAS RICKS, Superintendent,               :          02-CV-6456 (JG)
                                            :
                           Respondent.   :
------------------------------------------------------------- X

A P P E A R A N C E S :

        Amin Booker
                Inmate Number 98-A-6245
                Green Haven Correctional Facility
                P.O. Box 4000
                Stormville, New York  12582-0010
                Petitioner *Pro se*

        CHARLES J. HYNES
                District Attorney
                Kings County
        By:     Joseph Huttler
                Assistant District Attorney
                     of Counsel
                Attorney for Respondent

JOHN GLEESON, United States District Judge:

        Amin Booker petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,

having been convicted in the Supreme Court of New York, Kings County, of one count of

murder in the second degree, one count of attempted murder in the second degree, and one count

of reckless endangerment in the first degree.   Booker was sentenced to a total of 45 years to life

in prison.  Oral argument of the petition was held by telephone conference on June 9, 2006.

        For the reasons set forth below, I deny the petition.

BACKGROUND

A.  <u>The Facts</u>

The government's evidence at trial established that around 9:30 p.m. on June 3, 1996, Amin Booker shot and killed Purcell Davis (also known as "Sonny") and shot Theodore Jones (also known as "Divine") in the leg.  Booker fired at a group of people, which included Davis and Jones, who were playing dice outside the apartment building at 33-35 Saratoga Avenue in Brooklyn.  Three police officers arrived at the scene, saw Booker shoot at the building, and chased him.  During this chase, Booker shot at the officers and then threw a .45 caliber semiautomatic handgun in the grass.  Minutes later, Booker was caught and arrested.

Before the shooting, Davis, Jones and two others, "Man" and Shakeem, were standing in front of 33-35 Saratoga Avenue while Davis and Shakeem played dice.  In front of the building, a light was on.  Shawnese Fore (Jones's girlfriend) and Denise Simon were also present, and were talking to Jones and Davis.  Simon saw Booker sitting on a bench approximately 10 to 12 feet from the front of the building and noticed that he was wearing a red hat, a red shirt, red pants and white sneakers.  Simon and Fore then went up to Simon's apartment on the eighth floor, where they would witness the shooting and the police chase of Booker.

When the shooting began, Jones and his friends ran to the front entrance of the building to escape the gun fire.  But there was not enough room in the doorway, so Jones and Man ran toward a fence to the left of the building.  When Fore and Simon heard the shots, they went to the window.  Simon did not see Booker on the bench.  Fore saw him running on Saratoga and shooting at 33-35 Saratoga Avenue with two guns.  Fore saw that the shooter was wearing all

2

red, but she did not see his face. Meanwhile, Jones jumped the fence and was shot in the left leg when trying to jump a second fence. When he fell to the ground, he turned around and saw Booker, who was wearing a red jacket and holding a gun. Booker tried to shoot Jones again, but his gun jammed. At trial, Jones specifically identified Booker as the person who shot him.

Police Officers Clisti, Pearsall, and Bresnihan were driving on Saratoga Avenue in a marked police car when they heard gunshots. They saw Booker, wearing red clothing, backing up toward the car while shooting toward 33-35 Saratoga Avenue. Pearsall observed Booker firing two guns. When the officers attempted to get out of the car, Booker turned and shot at them. The officers identified themselves and ordered Booker to stop. A chase ensued, which Fore and Simon witnessed from their apartment. The chase lasted between one and one-half and eight minutes, according to the officers. It ended when Clisti, Pearsall, and two transit officers who had arrived on the scene surrounded Booker. Booker surrendered and was arrested. The officers did not see anyone else in the area wearing red during the incident. Bresnihan traced Booker's route and found a .45 caliber handgun in the grass on Saratoga Avenue, which was not well lit at the time.

After the arrest, Davis, Jones, and Fore were brought to the hospital. Booker was taken to the precinct, where he was processed and photographed. After the police removed his red shirt, they seized a white elastic band -- a band typically used to holster a gun -- from around his waist.

Jones suffered a broken leg from the gunshot wound and was in the hospital for five days. Davis suffered from two gunshot wounds: one fatal shot to the right side of his back that went through the abdomen and a major blood vessel, and one through his right knee. The

bullet extracted from Davis's body was fired from the recovered .45 handgun.[1]

Booker was charged with two counts of murder in the second degree, three counts of attempted murder in the first degree, one count of attempted murder in the second degree, two counts of assault in the first degree, one count of reckless endangerment in the first degree, three counts of attempted aggravated assault upon a police officer, one count of criminal possession of a weapon in the second degree, and one count of criminal possession of a weapon in the third degree.

B.  Procedural History

1.  The Trial, Sentence, and Direct Appeal

On August 7, 1998, the jury found Booker guilty of one count of murder in the second degree, one count of attempted murder in the second degree, and one count of reckless endangerment in the first degree.  The jury acquitted Booker of the charges of firing at a police officer.

On September 3, 1998, Booker was sentenced as a second felony offender to consecutive terms of imprisonment of 25 years to life on the murder count and 20 years on the attempted murder count.  He was sentenced to seven years on the reckless endangerment count, to run concurrently with the other two sentences.  Booker was re-sentenced on September 24, 1998 to three and one-half to seven years for the reckless endangerment count.

On May 12, 2000, Booker, through counsel, appealed his conviction to the Appellate Division, Second Department.  Appellate counsel argued that (1) the conviction was

---

[1]    The ballistics expert, Detective Gennalo, determined that the firing pin on the recovered .45 semiautomatic handgun was broken, but he testified that it could have been damaged when it was thrown.

against the weight of the evidence because the prosecution's witnesses gave conflicting testimony and that their testimony was inconsistent with the physical evidence presented, and (2) the prosecution's failure to disclose the videotape of Jones's grand jury testimony (which was recorded in the hospital and played to the grand jury) was a violation of *People v. Rosario*, 9 N.Y.2d 286 (1961).

The Appellate Division affirmed the convictions on December 26, 2000. *People v. Booker*, 718 N.Y.S.2d 384 (2d Dep't 2000). Viewing the evidence in the light most favorable to the prosecution, the court determined that the verdicts were not against the weight of the evidence. *Id*. In addition, the court held that the *Rosario* claim was unpreserved for appellate review. *Id*. Specifically, the court stated:

> Where, as here, the defense counsel failed to request a specific remedy as a consequence of the People's alleged noncompliance with his request, and where the record is otherwise silent as to whether the material was produced, appellate review of the claim is foreclosed.

*Id*. (citations omitted).

On January 10, 2001, Booker's appellate counsel sought leave of the New York State Court of Appeals to appeal the Appellate Division's decision. Counsel presented the issue of whether the burden to create a record of disclosure concerning *Rosario* material requested by the defense lies with the prosecution. By certificate, the application to appeal was denied on May 10, 2001. *People v. Booker*, 96 N.Y.2d 826 (2001) (Levine, J.).

2. The First Coram Nobis Petition

On July 29, 2002, Booker petitioned the Appellate Division, Second Department for a writ of error coram nobis. He claimed that he had received ineffective assistance of appellate counsel because in the leave application to the New York Court of Appeals, counsel

failed to argue that the weight of the evidence did not support his conviction and that trial counsel was ineffective (for failing to obtain the videotaped statement of Jones and failing to preserve the *Rosario* claim based on that videotape for appellate review).

On November 12, 2002, the Appellate Division denied the petition, citing *Jones v. Barnes*, 463 U.S. 745 (1983). *People v. Booker*, 749 N.Y.S.2d 731 (2d Dep't 2002).

### 3. The Initial Petition Before This Court

On November 22, 2002, Booker filed his initial petition for a writ of habeas corpus in this court, claiming that (1) there was insufficient evidence to support a conviction and the verdict was against the weight of the evidence; and (2) appellate counsel was ineffective for (a) not exhausting the insufficiency of the evidence claim in the leave application to the New York Court of Appeals and (b) failing to adequately present the *Rosario* claim as part of the ineffective assistance of trial counsel claim before the Appellate Division. Respondent filed an opposition to the petition, but on March 8, 2004, I granted Booker's motion to stay the petition so he could bring a motion in state court.

### 4. The § 440 Motion

On March 11, 2004, Booker filed a motion *pro se* in New York Supreme Court to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. Booker raised six claims: (1) the prosecution acted improperly in failing to supply the defense with the videotape of Jones's grand jury testimony; (2) the prosecution failed to notify Booker within fifteen days of the arraignment about the videotape of Jones's statements, as required by CPL § 710.30; (3) the trial court failed to give a jury instruction regarding circumstantial evidence; (4) the prosecution failed to establish an independent source for in-court identifications

because the eyewitnesses did not testify at the *Wade* hearing; (5) he was entitled to a *Mapp* hearing; and (6) he received ineffective assistance of trial counsel because his attorney (a) failed to request a *Mapp* hearing, (b) failed to request a circumstantial evidence instruction, (c) failed to request an independent source hearing, (d) failed to seek sanctions for the prosecution's failure to produce *Rosario* material, specifically the videotape of Jones, (e) failed to move to suppress Jones's in-court identification, and (f) failed to suppress a pretrial showup identification by Simon, and (g) failed to call a witness (Jose Machicote) on Booker's behalf.

The New York Supreme Court, in a decision dated December 8, 2004, denied Booker's § 440.10 motion. The court held that Booker's first claim -- the prosecution's failure to disclose the videotape -- was "procedurally barred under CPL § 440.10(3)(a) because defendant unjustifiably failed to use due diligence to cause the matter to appear on the record in a manner providing an adequate basis for appellate review." *People v. Booker*, No. 7634/96 at 2 (N.Y. Sup. Ct. Dec. 8, 2004) (citations omitted). Of the other four claims, all but the ineffective assistance of counsel claim were deemed procedurally barred under § 440.10(2)(c) for failure to raise them on direct appeal when sufficient evidence was in the record to permit review on appeal. The court denied the ineffective assistance of trial counsel claim on the merits, holding generally that it did not meet the "high threshold" required for such claims. *People v. Booker*, No. 7634/96 at 4. The court specifically rejected each of the underlying grounds as well, stating as follows: (a) no *Mapp* hearing was necessary because Booker was searched lawfully, *i.e.*, the search was incident to his lawful arrest; (b) a circumstantial evidence charge, given by courts when the evidence is completely circumstantial, was not necessary because the prosecution presented direct evidence of guilt; (c) because there was no proof that the in-court identification was unduly suggestive, an

independent source hearing was not necessary; (d) the argument that the trial counsel should have sanctioned the prosecutors for failing to turn over the videotape of Jones's statement was rejected because Booker did not prove that the nondisclosure led to the verdict, and in any event, defense counsel had a transcript of the statement, making any prejudice negligible; (e) the photographic array shown to Jones was not unduly suggestive, so there was no need to suppress his in-court identification; (f) because the challenged showup identification procedure was not police arranged, there was no need to move to suppress it[2]; and (g) the argument that counsel failed to call a witness was procedurally barred, pursuant to CPL § 440.30(4)(b), because Booker failed to present sworn affidavits in support of his claim that the witness would have changed the outcome of the trial.

On January 10, 2005, Booker petitioned the Appellate Division, Second Department for leave to appeal the New York Supreme Court's denial of his § 440.10 motion. On April 13, 2005, the Appellate Division denied the application.

### 5. The Second Coram Nobis Petition

On April 18, 2005, Booker petitioned the Appellate Division, Second Department once again for a writ of error coram nobis. Booker claimed that his appellate counsel was ineffective because counsel failed to address: (1) the trial court's failure to give a circumstantial evidence jury charge; (2) the insufficiency of the evidence; (3) the prosecution's failure to notify Booker of Jones's identification of Booker within fifteen days of the arraignment, as required by CPL § 710.30(1)(b); (4) the prosecution's failure to establish an independent source for the in-

---

[2]     In fact, there was no showup identification by Simon. It is true that the police brought Booker back towards the location of the shooting, and that Simon saw him at that time, but the police neither brought him back for purposes of a showup nor asked Simon for an identification. *See* Trial Tr. 655, 697-98.

court identification of Booker where no eyewitnesses were present at the *Wade* hearing; and (5) the ineffective assistance of trial counsel.

On October 11, 2005, the Appellate Division, citing *Jones v. Barnes*, 463 U.S. 745 (1983), denied the petition, *People v. Booker*, 801 N.Y.S.2d 759 (2d Dep't 2005), and on January 23, 2006, the Court of Appeals of the State of New York denied Booker permission to further appeal. *People v. Booker*, 6 N.Y.3d 773 (2006) (Smith, J.).

6. <u>The Supplemental Claims in the Instant Petition</u>

On February 23, 2006, Booker filed the instant amended petition for a writ of habeas corpus, raising seven grounds: (1) the prosecution failed to disclose *Brady* and *Rosario* material, specifically the videotape of Jones's statement; (2) the trial court failed to instruct on circumstantial evidence; (3) the evidence at trial was not legally sufficient to support the murder and attempted murder convictions; (4) the prosecution did not establish an independent source for the in-court identifications of Booker and there was not an adequate basis for the trial court to determine whether there was an independent source; (5) the prosecution failed to provide notice within fifteen days of arraignment, as required by CPL § 710.30, that it intended to use Jones's identification of Booker at trial, and therefore the identification should have been precluded; (6) he received ineffective assistance of trial counsel because counsel (a) failed to seek sanctions against the prosecution for failure to provide *Rosario* material, specifically the videotape, (b) failed to move to suppress showup evidence, (c) failed to move to reopen a *Wade* hearing when Simon allegedly testified about the showup identification, (d) failed to ask for an independent source hearing, (e) did not seek sanctions based on the prosecution's violation of the notice requirement pursuant to § 710.30, (f) failed to call a witness (Jose Machicote) to testify on

Booker's behalf, and (g) failed to request a circumstantial evidence instruction; and (7) he received ineffective assistance of appellate counsel because counsel failed to raise the first six issues in this motion.

DISCUSSION

A. The Habeas Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. See 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[3] 28 U.S.C. § 2254(d)(1). The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state

---

[3]     Habeas relief is also warranted where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2). As discussed below, that subsection is relevant to Booker's challenge to the photo array shown to Jones.

court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 123 S. Ct. 1166, 1175 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist, 260 F.3d at 93* (citing *Williams*, 529 U.S. at 411); *see also Yarborough v. Gentry*, 124 S. Ct. 1, 4 (2003) (per curiam) ("Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable."); *Wiggins*, 539 U.S. at 520-21 (same). Interpreting *Williams*, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (citing *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

The Supreme Court has explained that the specificity with which the rule of law at issue is defined may affect whether the state court's determination was "unreasonable":

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the

> course of time. Applying a general standard to a specific case can demand
> a substantial element of judgment. As a result, evaluating whether a rule
> application was unreasonable requires considering the rule's specificity.
> The more general the rule, the more leeway courts have in reaching
> outcomes in case by case determinations.

*Alvarado*, 124 S. Ct. at 2149.

This standard of review applies whenever the state court has adjudicated the

federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As

the Second Circuit stated in *Sellan v. Kuhlman*:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state
> prisoner's federal claim on the merits when it (1) disposes of the claim "on
> the merits," and (2) reduces its disposition to judgment. When a state
> court does so, a federal habeas court must defer in the manner prescribed
> by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal
> claim—even if the state court does not explicitly refer to either the federal
> claim or to relevant federal case law.

261 F.3d 303, 312 (2d Cir. 2001).

In addition, a state court's determination of a factual issue is presumed to be

correct, and is unreasonable only where the petitioner meets the burden of "rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

> However, "even in the context of federal habeas, deference does not imply
> abandonment or abdication of judicial review . . . . A federal court can
> disagree with a state court's credibility determination and, when guided by
> AEDPA, conclude the decision was unreasonable or that the factual
> premise was incorrect by clear and convincing evidence."

*Shabazz v. Artuz*, 336 F.3d 154, 161 (2d Cir. 2003) (ellipsis in original) (quoting *Miller-El v.*

*Cockrell*, 537 U.S. 322, 340 (2003)).

B.  Booker's Claims

    1.  The Videotaped Statement of Jones

Booker claims that there was a *Brady/Rosario* violation in the form of the prosecution's failure to turn over the videotaped statement of Jones that was shown to the grand jury.  Respondent says that the claim is procedurally defaulted and without merit.

This is not the first time Booker has challenged his convictions based on the videotaped statement by Jones, which was presented to the grand jury.  On direct appeal, he argued that he should get a new trial because the prosecution failed to turn over the videotape, which Jones had given while in the hospital recovering from the gunshot wound.[4] *See* Brief for Appellant on Direct Review at 23-27.  On direct review, the Appellate Division held that the claim was unpreserved. *People v. Booker*, 718 N.Y.S.2d at 385.

In his § 440.10 motion, Booker raised the issue again and added another dimension, saying he did not get *notice* of the videotaped statement, as required by CPL § 710.30.  The state court rejected the argument. The court held that "[t]he allegation that the prosecutor failed to provide defendant with a videotape of a witness's grand jury testimony is procedurally barred under CPL § 440.10(3)(a) because defendant unjustifiably failed to use due diligence to cause the matter to appear on the record in a manner providing an adequate basis for appellate review." *People v. Booker*, No. 7634/96 at 2 (citations omitted).  Regarding the notice claim, the court held that it was "procedurally barred by CPL § 440.10(2)(c) ... [because] sufficient facts appear on the record to have permitted adequate review of the issue on appeal.

---

[4]    As the trial court stated during the *Wade* hearing, "[v]ery often, when complainants are injured in order to get the case before a grand jury it's often done through a hospital since the victim is unable to come to a court." *Wade* hearing Tr. at 5-6.

Defendant's unjustifiable failure to raise [this issue] on appeal bars [its] consideration on collateral review." *Id.*

On this habeas petition, Booker appears to argue only the deprivation claim, not the failure to notify pursuant to CPL § 710.30.[5]  The respondent says the claim is procedurally defaulted and without merit.  I agree with the respondent.

Federal habeas review of a state prisoner's claim is prohibited if a state court judgment denying the claim is based on an "adequate and independent state ground." *Harris v. Reed*, 489 U.S. 255, 261 (1992); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d. Cir. 1995).  A procedural default in state court is an adequate and independent ground barring federal habeas review.  *Coleman v. Thompson*, 501 U.S. 722, 744, 750 (1991) (noting the state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct [their] own errors"); *see also Lee v. Kemna*, 534 U.S. 362, 376, 381 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question").

A defaulted claim will be considered by a habeas court upon a showing of cause and prejudice.  *See Coleman*, 501 U.S. at 750; *Teague v. Lane*, 489 U.S. 288, 298 (1989).  A petitioner may establish cause by showing "that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials . . . made compliance impracticable."  *Coleman*, 501 U.S. at 753 (ellipses in original) (internal quotation marks omitted).  To satisfy the prejudice requirement, the alleged error must have worked to the

---

[5]        Even if raised, that claimed violation of state law is not cognizable on habeas review.

petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted). If the petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim, i.e., "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)).

Booker has not established either cause or prejudice. He has not even alleged, let alone demonstrated, that counsel's failure to preserve an objection to the failure to produce the videotape of Jones's statement was caused by the unavailability of the factual or legal basis necessary for such an objection. Defendant's counsel discovered the existence of the videotape at a pretrial hearing, when he read the grand jury transcript, and requested a copy of the tape. There is also no indication (or allegation) that a state official interfered with Booker's counsel's ability to alert the court to the claimed failure of the prosecution to turn over the videotape.

Even if Booker had shown cause for the procedural default, he would be further required to demonstrate that the failure to produce it caused an "actual and substantial disadvantage" to his case or produced a fundamental miscarriage of justice. He has failed to do so. Both initial counsel (Brettschneider) and trial counsel (Karp) were aware of the sworn videotaped statement that constituted Jones's grand jury testimony, and they had a transcript of the statement. Indeed, Karp cross-examined Jones about the statement at trial. Trial Tr. 311-12. Reasons why defense counsel might choose not to play (or even obtain) the videotape showing his client's gunshot victim in the hospital are not difficult to imagine.

In sum, Booker's claim based on the videotaped statement of Jones is both procedurally defaulted and meritless.

### 2. The Claimed Failure to Give a Circumstantial Evidence Instruction

Booker claims that the trial court should have given a circumstantial evidence charge since there was no direct evidence that Booker shot Davis, and the prosecution presented no direct evidence regarding Booker's intent to shoot anyone. The respondent contends, and I agree, that the claim is procedurally defaulted and without merit.

Booker raised the circumstantial evidence instruction claim in his § 440.10 motion. The court held that the claim was "procedurally barred by CPL § 440.10(2)(c) ... [because] sufficient facts appear on the record to have permitted adequate review of the issue on appeal. Defendant's unjustifiable failure to raise [this issue] on appeal bars [its] consideration on collateral review." *People v. Booker*, No. 7634/96 at 2 (citations omitted). Booker has shown neither cause for the default nor prejudice flowing from it.

In any event, this was hardly a circumstantial case. Jones saw his shooter, and identified him at trial as Booker. Simon also identified Booker as the man in red who did the shootings and ran away. The police caught the red-clad Booker virtually redhanded, and apprehended him near the scene after a chase.

Finally, the trial judge adequately instructed the jury regarding the concept of circumstantial evidence. For an error in the jury charge to give rise to federal habeas corpus relief, a petitioner must carry a heavy burden. "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on

direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The petitioner must show

> not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant under the Fourteenth Amendment. . . . [T]he question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction itself so infected the entire trial process that the resulting conviction violates due process."

*Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973); *see also Estelle v. McGuire*, 502 U.S. 62, 72 (1991). In making this determination, a court "must consider the challenged portion of the charge not in 'artificial isolation,' but rather 'in the context of the overall charge.'" *Justice v. Hoke*, 45 F.3d 33, 34 (2d Cir. 1995) (quoting *Cupp*, 414 U.S. at 146-47).

Here the trial court charged the jury as follows:

> You may draw proper, reasonable and fair inferences from the evidence. The defendant, Amin Booker, is entitled to every inference in his favor which can reasonably be drawn from the evidence. Should you find there are two inferences which can reasonably be drawn from the evidence, one of which would be consistent with a verdict of guilty and one of which would be consistent with a verdict of not guilty, Mr. Booker is entitled to the inference which would lead to the not guilty verdict.

Tr: 902-903. Booker was not entitled to anything more.

3. Insufficiency of the Evidence

Booker claims the evidence presented at trial was legally insufficient to support his murder and attempted murder convictions. The respondent says the claim is procedurally barred and meritless. I agree with the respondent.

A petitioner "challenging the sufficiency of the evidence bears a very heavy burden." *Einaugler v. Supreme Court*, 109 F.3d 836, 840 (2d Cir. 1997) (internal quotation marks omitted). A state criminal conviction will be upheld if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In making this assessment, a court may neither "disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989), nor "weigh conflicting testimony." *Fagon v. Bara*, 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (citing *United States v. Zabare*, 871 F.2d 282, 286 (2d Cir. 1989)). Thus, under this "rigorous standard," a "federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

In Booker's case, Officers Clisti, Pearsall, and Bresnihan all testified that they saw Booker shooting at 33-35 Saratoga Avenue, as did Denise Fore. Simon saw Booker run out of the building and shoot Jones. Moments after Jones was shot, he turned and saw Booker, his shooter, who promptly tried to shoot Jones again, but his gun jammed. The fact that Booker was wearing all red, coupled with the fact that witnesses testified that no other person in the surrounding area was wearing red, made him especially noticeable.

During the police chase, Booker shot at the officers. The chase was brief; the officers testified that it lasted between one and one-half and eight minutes. Fore testified that the time between the initial shooting and when she went downstairs at the end of the incident was only five to seven minutes. The police captured Booker in close

proximity to 33-35 Saratoga Avenue and in full view of Simon and Fore. Officers

Bresnihan and Pearsall watched Booker the whole time, and Officer Clisti and Simon lost

sight of him only momentarily. Additionally, the police found a holster on Booker at the

precinct and ballistics evidence showed the bullets found at 33-35 Saratoga and extracted

from Davis's body matched the gun Booker threw away, an action witnessed by both

Simon and Fore. From this evidence, particularly when it is viewed in the light most

favorable to the respondent, the jury could readily have concluded that the shooter was

Booker. His sufficiency claim therefore fails.[6]

### 4. The Identification Procedures

Booker challenges the identifications of him at trial by Simon and Jones.

He asserts that it was an error to permit those identifications to be made where neither of

those witnesses testified at the *Wade* hearing. He also challenges the suggestive nature of

the alleged showup on the night of his arrest. Booker further appears to challenge the

suggestiveness of the photo array shown to Jones and contends there was no independent

source for Jones's in-court identification. Respondent contends that Booker's claims are

procedurally barred and meritless.

Booker raised the prosecution's failure to present an independent source for his

in-court identification in his § 440 motion to the N.Y. Supreme Court, which rejected the

claim as procedurally barred pursuant to CPL § 440.10(2)(c). Specifically, the court

stated: "Sufficient facts appear on the record to have permitted adequate review of the

---

[6]     In light of the foregoing, we need not address respondent's additional argument that the
sufficiency claim is procedurally defaulted.

issue on appeal. Defendant's unjustifiable failure to raise such issues on appeal bars their consideration on collateral review." *People v. Booker*, No. 7634/96 at 2 (citations omitted). I agree that claim is procedurally defaulted. Additionally, Booker has not shown any cause for the default or prejudice resulting from the failure to preserve this claim.

In any event, the claim is without merit. If pretrial identification procedures are impermissibly suggestive, due process requires the exclusion of the identification testimony unless its reliability is established through independent evidence. *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *see also Stovall v. Denno*, 388 U.S. 293, 301-02 (1967) (court must determine from totality of circumstances whether identification "was so unnecessarily suggestive and conducive to irreparable mistaken identification that [defendant] was denied due process of law").

When a witness has made a pretrial identification, a challenge to that identification and to an in-court identification of the defendant at trial triggers "a one-step or two-step inquiry." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). The first step is to determine whether the pretrial identification procedures were unnecessarily suggestive. *See Maldonado-Rivera*, 922 F.2d at 973. If they were not, the challenge is denied, and the reliability of the identification is a question only for the jury. *See Jarrett v. Headley*, 802 F.2d 34, 42 (2d Cir. 1986). If the procedures were unnecessarily suggestive, the second step is to determine whether the identification testimony is nevertheless admissible because it is "independently reliable rather than the product of the earlier suggestive procedures." *Maldonado-Rivera*, 922 F.2d at 973.

Booker's claim that the identifying witnesses were required to testify at the *Wade* hearing has no merit. There is no constitutional right to have identifying witnesses testify at such a hearing, and indeed there are several reasons why, in a particular case, the defendant himself should not even be permitted to call them. In any event, Booker cites no authority for his claim, and I am not aware of any.

Booker challenges the identification procedure used with Jones. Jones was shown a photo array in the hospital by Detective Adam Rubin. That procedure was the subject of a pretrial *Wade* hearing, after which counsel for Jones made no real challenge to the suggestiveness of the photos in the array.[7] The hearing court found as follows: "As for the array, it seems like a fair array. It seems like the same kinds of face structure and age of the people who are in the array. I find it not suggestive, and so I would deny your motion to suppress the array." *Wade* Hearing Tr. at 49.

Booker has failed to show that this finding, which defeats his claim on the merits, was unreasonable, *see* 28 U.S.C. § 2254(d)(2), or that it is not entitled to a presumption of correctness he has not rebutted, *see* 28 U.S.C. § 2254(e)(1).

As for the claimed showup of Booker to Simon, the state court properly found that no such identification occurred. Though the police escorted Booker back to the scene, and Simon saw him, it was not for identification purposes. And even if it were, it would not have been improper. A showup -- the presentation of a single suspect (or a single photo of the suspect) to a victim or witness -- is indeed the least reliable

---

[7]     Booker's counsel preserved his objection to the array, but said he would leave its fairness "to the discretion of the court." *Wade* Hearing Tr. at 48.

identification procedure. *See, e.g., Dunnigan v. Keane*, 137 F.3d 117, 129 (2d Cir. 1998) (photographic showup consisting of 30 pictures of one person using an ATM card, and no pictures of anyone else, was "highly suggestive").  A showup may be permissible, however, where there is an "overriding necessity" for its use. *United States v. Concepcion*, 983 F.3d 369, 377 (2d Cir. 1992).  For example, the Supreme Court upheld a hospital showup where the victim, the only witness to the crime, was believed to be dying. *See Stovall*, 388 U.S. at 302.  In the circumstances of this case, I conclude that the alleged showup, even if it had occurred, would not have been unnecessarily suggestive.

Finally, the evidence shows Simon had an ample opportunity to observe Booker.  Prior to the shooting, she saw Booker sitting on a bench outside 33-35 Saratoga Avenue.  He was dressed entirely in red.  Simon was in her apartment on the eighth floor when the shooting began.  Simon looked out her apartment window and noticed Booker was not on the bench anymore.  She next saw him run out of the building with a gun and shoot at Jones.  In addition, Simon watched as the police chased Booker.  She had a "clear view" from the bedroom during the chase to Hancock Street, where Booker was arrested. Trial Tr. at 647.  Simon lost track of Booker only briefly, when she moved to her bedroom as Booker ran behind a garage.  Otherwise, Simon kept her eye on Booker by following his outfit.  No one else in the area was wearing all red.

### 5. Ineffective Assistance of Counsel

Booker claims trial counsel was ineffective in various respects.[8]  He

---

[8]      The specific grounds were counsel's: (1) failure to seek sanctions for the prosecution's nondisclosure of *Rosario* material, specifically the videotape; (2) failure to seek suppression of the showup evidence; (3) failure to make a motion to reopen the *Wade* hearing when a witness testified about showup identification; (4) failure to request an independent source hearing; (5) failure to alert the court to the

further claims that appellate counsel was ineffective.[9]  Respondent says that Booker's claim is without merit because he received effective assistance of both trial and appellate counsel.

Booker raised the ineffective assistance of trial counsel claim in his § 440.10 motion before the New York Supreme Court.  In rejecting the claim, the state court wrote:

> In this instance, defendant's claims fell far short of the high threshold for ineffective assistance of counsel.
>
> Of the failures attributed to defense counsel most would have been exercises in futility.  Because the search for any property was incidental to defendant's lawful arrest, no *Mapp* hearing was called for.  A circumstantial evidence charge is required only where the evidence presented against the defendant is wholly circumstantial.  Here, sufficient direct evidence of defendant's guilt was presented to make a circumstantial evidence charge to the jury unwarranted.  Without a showing on the part of defendant that an identification procedure was unduly suggestive there was no need for the People to demonstrate the existence of an independent source for any of the witnesses' in-court identifications.  Since the hearing court found that the viewing of a photographic array by the surviving shooting victim was not unduly suggestive, no grounds existed for challenging the right of a witness to make an in-court identification.  Finally, the allegation that counsel was ineffective for failing to move to suppress a showup identification procedure involving an unharmed witness is baseless because the witness' observations were not a product of any police arranged procedure.
>
> Defendant's claim arising from counsel's failure to seek sanctions

prosecution's failure to notify Booker, pursuant to CPL § 710.30, regarding the in-court identification; (6) failure to call an eyewitness, Jose Machicote; and (7) failure to request a circumstantial evidence charge.

[9]     With respect to appellate counsel, Booker's specific claims are that counsel failed to raise on appeal: (1) the prosecution's failure to turn over *Rosario* material (the videotape); (2) the trial court's failure to give a circumstantial evidence instruction; (3) that the evidence was legally insufficient to support the murder and attempted murder convictions; (4) that the prosecution failed to give adequate notice pursuant to CPL § 710.30 of the existence of the videotape; (5) that the prosecution did not establish an independent source for the in-court identification; and (6) that trial counsel was ineffective. (In other words, the first six claims alleged in his petition.)

for the prosecutor's alleged *Rosario* violation is also rejected. Assuming arguendo the viability of such violation, the defendant has nonetheless failed to show a reasonable possibility that the failure to disclose the *Rosario* material contributed to the verdict. Moreover, in light of counsel's possession of a written transcript of the witness' video-taped statement, any prejudice to defendant from not having the actual video-tape is negligible.

Finally, defendant's claim that defense counsel was ineffective because he failed to properly investigate and call a particular witness is procedurally barred. CPL § 440.30(4)(b) permits a court to deny a motion to vacate a judgment without a hearing if the moving papers do not contain sworn allegations substantiating all essential facts. The affidavit must be from a person having actual and personal knowledge of the facts at issue. Conclusory allegations do not constitute sworn allegations of fact but merely claims.

Here, defendant has failed to provide any sworn affidavits in support of his contentions. Absent such affidavits, it is pure speculation to conclude that the course of defendant's trial should have been altered by the testimony of defendant's prospective witness.

Accordingly, defendant's motion is denied in its entirety.

*People v. Booker*, No. 7634/96 at 4-6 (citations & internal quotation marks omitted).

Booker raised the ineffective assistance of appellate counsel claim in his first and second petitions for a writ of error coram nobis to the Appellate Division. The court disposed of both petitions in the same way, stating that "[t]he appellant has failed to establish that he was denied the effective assistance of appellate counsel." *People v. Booker*, 749 N.Y.S.2d 731 (2d Dep't 2002); *People v. Booker*, 801 N.Y.S.2d 759 (2d Dep't 2005) (citations omitted).

The Supreme Court has established the following standard for ineffective assistance claims:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was

24

> not functioning as the "counsel" guaranteed the defendant by the Sixth
> Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable.  Unless a defendant makes both showings, it
> cannot be said that the conviction . . . resulted from a breakdown in the
> adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Thus, to make out this type of

claim, the petitioner must demonstrate both (1) that his attorney's performance "fell

below an objective standard of reasonableness," *id*. at 688, and (2) that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different," *id*. at 694.  In assessing the reasonableness of

counsel's performance, judicial scrutiny "must be highly deferential," and the court must

"indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance; that is, the defendant must overcome the presumption

that, under the circumstances, the challenged action might be considered sound trial

strategy."  *Strickland*, 466 U.S. at 689 (internal quotation marks omitted); *Jackson v.

Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998); see also *Yarborough v. Gentry*, 124 S. Ct. 1, 4

(2003) (per curiam) ("[C]ounsel has wide latitude in deciding how best to represent a

client . . . .").

      In assessing counsel's performance, I "must conduct an objective

review . . . measured for 'reasonableness under prevailing professional norms,' which

includes a context-dependent consideration of the challenged conduct as seen 'from

counsel's perspective at the time.'"  *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (citations

omitted) (quoting *Strickland*, 466 U.S. at 688-89)).  The Supreme Court has "declined to

articulate specific guidelines for appropriate attorney conduct" and has instead emphasized that "'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id*. at 521 (quoting *Strickland*, 466 U.S. at 688).

To establish the requisite effect of counsel's performance on the outcome of the proceeding, it is not sufficient if the petitioner shows merely that counsel's errors had "some conceivable effect" on the outcome. *Strickland*, 466 U.S. at 693. Rather, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id*. This determination, unlike the determination whether counsel's performance fell below an objective standard of reasonableness, may be made with the benefit of hindsight. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Although the Supreme Court formulated the *Strickland* test in the context of examining a claim of ineffective assistance of trial counsel, the same test applies to claims regarding the performance of appellate counsel. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994); *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992). Appellate counsel need not present every nonfrivolous argument that could be made. *See Mayo*, 13 F.3d at 533 (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)); *see also Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (emphasizing that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's strategy choices. *See*

*Mayo, 13 F.3d at 533* (citing *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).  A petitioner, however, may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing matters that were patently and significantly weaker.  *Cf. Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) ("[R]elief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy.").

Booker has failed to show that the state court's decisions rejecting his ineffective assistance claims were wrong, let alone unreasonable.  I have examined carefully all of the various claims of error, and find none to have even the slightest merit.  Booker was ably represented in a case that included overwhelming evidence of guilt.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied.  Because Booker has failed to make a substantial showing that he was deprived of his constitutional rights, *see* 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.[10]

So ordered.

John Gleeson, U.S.D.J.

Dated:      August 4, 2006
            Brooklyn, New York

---

[10]      Booker recently filed a motion cast as a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b). That motion is denied.  He has also sought another stay of this petition in order to exhaust in state court yet another claim of ineffective assistance of counsel.  Because I find that a second stay of the petition would be inappropriate under the current circumstances of the case, the motion is denied.